IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

RAY C. TURNAGE;                                                          PLAINTIFFS
REVEREND D. FRANKLIN BROWNE;
DENNIS D. HENDERSON; CARLOS WILSON;
FRED BURNS; CHARLES BARTLEY; CLARENCE
MAGEE; LINDA PATRICK-CRAFTON;
BARBARA YOUNG; JUANITA J. GRIGGS;
CHERNISE SEAPHUS; And On Behalf
Of Themselves And All Others Similarly
Situated


V.                                        CIVIL ACTION NO.  3:18-cv-818-CWR-FKB


SAM BRITTON, Mississippi Public                                         DEFENDANTS
Service Commissioner; CECIL BROWN,
Mississippi Public Service Commissioner;
BRANDON PRESLEY; and MISSISSIPPI
POWER COMPANY


## CLASS ACTION COMPLAINT

## JURY TRIAL DEMANDED

        COME NOW the plaintiffs, on behalf of themselves and all others similarly situated,

by and through counsel and for their Class Action Complaint, allege, with personal knowledge

as to their own actions, and upon information and belief as to those of others, as follows:

### I.  Nature Of This Case

1.        This class action seeks to obtain declaratory and injunctive relief and monetary

Case 3:18-cv-00818-CWR-FKB   Document 1   Filed 11/21/18   Page 2 of 23

damages based on the facts that (1) the Mississippi Public Service Commission (MPSC) allowed Mississippi Power Company (MPC) to include in its rate base preconstruction and construction costs ("CWIP") for the Kemper project; (2) by allowing MPC to add CWIP to its rate base, the MPSC has allowed MPC to recover its preconstruction and construction financing costs for the Kemper Project, prior to placing the Kemper plaint in service. Furthermore, MPC underpaid of statutory interest on the $357 million increased electrical rates collected pursuant to MPSC Final Order dated March 5, 2013. The increased rates were achieved by including "mirror CWIP" in the rate base and rates. Following the inclusion of "mirror CWIP," the MPSC "approve[d] the retail revenue adjustment over 2013 and 2014 … allow[ing] MPC an annual rate designed to collect $125,000,000 for 2013, escalating to $156,000,000 in 2014. This represents a 15% and 4% increase, respectively." MPSC's Final Order, p. 24 (Mar. 5, 2013). The increased electrical rates for MPC'S 186,000 South Mississippi ratepayers went into effect with the first billing cycle of April 2013 which failed to comport with the Baseload Act, Miss. Code Ann. Sections 77-3-101 to 77-3-109 (Rev. 2009), or otherwise, with Mississippi law.

2.      By Opinion dated June 11, 2015, the Mississippi Supreme Court invalidated the unauthorized rate increases for electricity approved by the MPSC for MPC on the ground that the MPSC "failed to comply with the language of the Base Load Act, inter alia, and exceeded its authority granted by the Act." Mississippi Power Co., Inc. v. Mississippi Public Service Com'n, 168 So.3d 905, 908 (Miss. 2015). As of June 30, 2015, MPC had collected approximately $331 million pursuant to the Mirror CWIP Order and accrued an

additional $22 million of carrying costs.

3.     This suit is brought to pursuant to 28 U.S.C. Section 1331, 1332 (d)(2) (Class Action Fairness Act) 1343(3) and the common law of the State of Mississippi on behalf of the MPC 186,000 consumers who paid increased rates for MPC electricity from April 2013 to July 20, 2015, and who received their court-ordered refunds ending with the last batch of check printed and mailed on December 4, 2015.   This class action seeks, inter alia, declaratory and injunctive relief, actual damages, statutory prejudgment interest compounded on liquidated amounts, punitive damages, attorney's fees, and the costs of this suit.

## II. <u>Parties</u>

4. Plaintiffs Ray C. Turnage, Reverend  Franklin D. Browne, Dennis D. Henderson, Carlos Wilson, Fred Burns, Charles Bartley, Clarence Magee, Linda Patrick-Crafton, Barbara Young, Juanita J. Griggs and Chernise Seaphus are citizens of the State of Mississippi and the putative class consists of citizens of the State of Mississippi.   Numerous members of the proposed class members are citizens of States other than the State of Mississippi.   Defendant MPC's electronic customer database has facts, information and data that reveals  the actual citizenship of each proposed class member who reside in other states.

5. Defendant Sam Britton is a resident of the State of Mississippi and is the duly elected member of the MSPC who replaced Lynn Posey who voted to approve the March 5, 2013 Mirror CWIP order. Pursuant to FRCP 25,  defendant Britton is substituted for Lynn Posey and is being sued in official capacity as member of MPC. Defendant Britton maybe served with process of this Court at 501 N. West Street #201a, Jackson, Mississippi 39201.

6.      Defendant Cecil Brown is a resident of the State of Mississippi and was the duly elected members of the MSPC who replaced R. Steven Renfroe who  voted to approve the March 5, 2013 Mirror CWIP order.  Pursuant to FRCP 25,  defendant Brown is substituted for R. Steven Renfroe and is being sued in official capacity as member of MPC. Defendant Brown maybe served with process of this Court at 501 N. West Street #201a, Jackson, Mississippi 39201.

7.      Defendant Brandon Presley is a resident of the State of Mississippi and was the duly elected members of the MSPC who voted to approve the March 5, 2013 Mirror CWIP order. Defendant Presley is being sued in his official capacity as chairman of MPC. Defendant Presley maybe served with process of this Court at 501 N. West Street #201a, Jackson, Mississippi 39201.

8.      Defendant MPC is a corporation organized under the laws of the State of Mississippi with its principal place of business located in Harrison County, Mississippi. MPC's registered agent for process is Jeffrey A. Stone, 2992 West Beach Boulevard, Gulfport, Harrison County, Mississippi.

9.      Pursuant to the Class Action Fairness Act ("CAFA"), and under CAFA, defendant MPC is a corporation organized and existing under the laws of the State of Mississippi where it has its principal place of business and under whose laws it is organized. 28 U.S.C. § 1332(d)(10).

### III. Jurisdiction And Venue

10.      Jurisdiction in this civil action is authorized pursuant to 28 U.S.C. § 1332(d),

as minimal diversity exists, there are more than 100 class members, and the amount in controversy is in excess of $5 million.

11.    This Court has subject matter jurisdiction over plaintiffs' claims arising under the United States Constitution and federal law pursuant to 28 U.S.C. § 1331.

12.    This Court has subject matter jurisdiction over plaintiffs' claims arising under 42 U.S.C. § 1983 pursuant to 28 U.S.C. § 1343.

13. The Court is empowered to grant declaratory relief by 28 U.S.C. §§ 2201 and 2202 and Rule 57 of the Federal Rules of Civil Procedure.

14. This Court is empowered to grant preliminary and permanent injunctive relief by, inter alia, 28 U.S.C. § 2202 Fed. R. Civ. P. and Rule 65. This Court has personal jurisdiction over the named defendants in their official capacities because each MPSC member defendant conducts a substantial portion of his or her duties as an officer of the MPSC in the State of Mississippi. The MPSC's main office is located in Jackson, Hinds County, Mississippi. The MPSC decision to add CWIP for the Kemper project was voted upon and decided in Hinds County, Mississippi.

15. Venue is proper in the Northern Division of the Southern District of Mississippi under 28 U.S.C. § 1391(b)(l) and (2) because a substantial part of the events giving rise to this action occurred in the Northern Division of the Southern District of Mississippi.

### IV. Operative Facts

16. On January 16, 2009, MPC filed with the MPSC a Petition for a Certificate of Public Convenience and Necessity (the "Certificate Proceedings") requesting, inter alia, the

authority to construct an electric generation facility in Kemper County (the "Kemper Project"). See Petition for Facilities Certificate for the Kemper County IGCC Project, MPSC Docket No. 2009-UA-0014 (Jan. 16, 2009).

17. On January 16, 2009, Mississippi Power filed a "Petition for a Certificate of Public Convenience and Necessity[,]" requesting authority to construct an electric generation facility in Kemper County, Mississippi ("Kemper Project").

18. On January 16, 2009, MPC filed a petition for a certificate of public convenience and necessity to construct and operate a new 582 mega watt baseload generating plant in Kemper County, Mississippi. The proposed plant would include a lignite coal-fueled integrated gasificationcombined-cycle (IGCC) baseload facility, environmental equipment, approximately 60 miles of transmission lines, three new transmission substations, approximately 5 miles of natural gas pipeline, and other related facilities. The MPC estimated its service date for the plant was in 2014.

19. On January 16, 2009, MPC filed a petition for a certificate of public convenience and necessity to construct and operate a new 582 MW baseload generating plant in Kemper county. The proposed plant would include a lignite coal-fueled integrated gasification combined-cycle (IGCC) baseload facility, environmental equipment, approximately 60 miles of transmission lines, three new transmission substations, approximately five miles of natural gas pipeline, and other related facilities. The estimated total cost of the entire project is $2.4 billion, net of tax credits and other incentives.

20. On June 5, 2009, the MPSC issued a scheduling order establishing a two phase

procedural schedule. The Phase 1 proceeding addressed whether and to what extent there exists a need for new resources. Phase 2 explored the availability and cost of new resources including the Kemper proposal.

21. On June 3, 2010, the MPSC issued a "Final Certificate Order" authorizing the acquisition, construction and operation of the Kemper County IGCC Project.

22. On April 27, 2011, MPC filed the CNP-A rate mechanism for recovery of the Kemper Project's construction financing costs during the construction period, beginning in 2012.

23. On April 27, 2011, MPC filed the CNP-A rate mechanism designed to provide recovery of the Kemper Project's construction financing costs during the construction period, beginning in 2012. The Staff, along with its IM, reviewed and investigated the filing including numerous sets of responses to data requests propounded by the Staff.

24.     On April 27, 2011, MPC filed in MPSC Docket No. 2011-UN-0135 a Notice of Intent requesting approval of its Certified New Plant, Rate Schedule CNP-A (the "CNP-A Rate Schedule"), a rate mechanism designed to provide timely recovery of the Kemper County IGCC Project's construction financing costs, during the construction period.

25. On June 1, 2011, the Staff and MPCo entered into an Amended and Restated Stipulation in which both parties reached an agreement to all but three CNP-A issues. The Stipulation left the unresolved issues to be decided by the MPSC.

26.     On November 15, 2011, in the same docket, MPC filed with the Commission MPC's CNP-A Filing for the 2012 Evaluation Period ("2012 CNP-A Annual Filing"),

requesting a retail revenue adjustment of $97,950,242, which represented the projected level of financing costs for the 2012 Evaluation Period.

27. On March 15, 2012, the Mississippi Supreme Court reversed the chancery court's judgment and the MPSC's order and remanded to the MPSC for further proceedings. The Court found that the MPSC's order provided "insufficient detail to enable [this] Court on appeal to determine the controverted questions presented, and the basis of the MPSC's conclusion."

28. On April 24, 2012, the MPSC issued a Final Order on Remand Granting a Certificate of Public Convenience and Necessity, Authorizing Application of Baseload Act, and Approving Prudent Pre-Construction Costs. The Final Order on Remand was a one-hundred thirty-two (132) page order detailing the MPSC's findings and conclusions after full re-examination and re-consideration of the record.

29. On April 24, 2012, the MPSC issued a Final Order on Remand Granting a Certificate of Public Convenience and Necessity ("CPCN"), Authorizing Application of Baseload Act, and Approving Prudent Pre-Construction Costs.

30.    On June 1, 2012, MPC and the Mississippi Public Utilities Staff("Staff") filed in MPSC Docket No. 2001-U-0135 an Amended and Restated Stipulation, which proposed amendments to the CNP-A Rate Schedule and required the calculation of a lower revenue requirement for the 2012 Evaluation Period.

31. On June 1, 2012, the MPSC Staff and MPC entered into an Amended and Restated Stipulation in which both parties agreed to all, but three issues.

32.     On June 22, 2012, following a public hearing, the MPSC issued it Order Denying CNP-A Filing ("CNP Order"), which denied both MPC's proposed CNP-A Annual Filing until such time as the appeal styled Sierra Club v. Mississippi Public Service Commission and then pending in the Harrison County Chancery Court, First Judicial District, (the "Certificate Appeal") was finally determined.

33. On June 22, 2012, the MPSC conducted an evidentiary hearing concerning CNP-A. At the end of the hearing, the MPSC voted to deny the CNP-A rate schedule. The MPSC found that it would not be prudent to allow MPCo to recover costs associated with the Kemper Project during the pendency of the appeal before the Mississippi Supreme Court or other appellate tribunal.

34. On June 22, 2012, the MPSC voted to deny the CNP-A rate schedule and MPCo appealed that order to the Mississippi Supreme Court.

35. On July 3, 2012, Bigger Pie Forum ("Bigger Pie") requested several documents from the MPSC marked confidential by Mississippi Power during the certificate proceeding in January 2009.

36.     On July 9, 2012, MPC perfected an appeal to the Mississippi Supreme Court, styled Mississippi Power Company v. Mississippi Public Service Commission, Civil Action No. 2012-UR-01108 (the "CNP Appeal"), requesting that the Mississippi Supreme Court reverse and remand the CNP Order.

37. On July 12, 2012, MPCo appealed the MPSC's order to the Mississippi Supreme Court.

9

38. On August 6, 2012, the Hinds County Chancery Court granted Mississippi Power a temporary protective order which prevented the MPSC from releasing the "confidential" documents pending a hearing on the matter. Following a hearing on September 18, 2012, Hinds County Chancellor Dewayne Thomas denied Mississippi Power's "Petition for Protective Order" and ordered that the documents be produced within ten days of his April 2013 ruling.

39.    On December 17, 2012, the Harrison County Chancery Court issued its Judgment in the Certificate Appeal affirming the MPSC's Final Order.

40.    On January 8, 2013, the Sierra Club appealed the Harrison County Chancery Court Judgment in the Certificate of Appeal to the Mississippi Supreme Court, styled Sierra Club v. Mississippi Public Service Commission, Civil Action No. 2013-TS-00043 (also referred to as the "Certificate Appeal").

41.    On January 24, 2013, MPC and MPSC entered into a Settlement Agreement.

42. On August 1, 2014, MPC and the Sierra Club executed a Settlement Agreement in the Sierra Club appeal of the Final Order on Remand.

43. On August 4, 2014, Thomas Blanton filed a Motion to Stay Joint Motion to Dismiss asking that the Certificate Appeal not be dismissed.

44. On May 15, 2015, MPC filed Notice of Intent of MPC for a Change in Rates Supported By Conventional Rate Filing Or, In the Alternative, By A Rate Mitigation Plan in Connection With the Kemper IGCC Project, assigned by the MPSC as Docket No. 2015-UN-80 requesting three alternative rate proposals.

45. On May 15, 2015, MPC filed its Notice of Intent to Change Rates with the

MPSC.

46. In May 2015, all of the information being relied upon to support the Company's In-Service Asset Proposal was first filed.

47. On June 11, 2015, the Mississippi Supreme Court struck down an 18% rate increase that had been requested by MPC and approved by the MPSC. The Court noted that the MPSC's proceedings had been marked by unlawful secrecy, arbitrariness, disregard for procedural safeguards provided by the Base Load Act, and significant due process violations. Mississippi Power, 168 So. 3d at 913-16. To remedy these due process violations, the Court reversed the MPSC's decision and remanded the case with instructions that the MPSC conduct a prudency hearing and afford intervening ratepayers all due process-"the opportunity to be heard ... at a meaningful time and in a meaningful manner."

48. On June 11, 2015, the Mississippi Supreme Court denied both motion for rehearing issuing a revised decision which again mandated that the 18% rate increase be eliminated and MPC's original rates be returned to what they were immediately prior to the MPSC's March 5, 2013 Order.

49. As Justice Pierce explained in his concurrence, which was joined by a majority of the Court, the MPSC's charge on remand was to employ due and meaningful process to arrive at "a fair, just and reasonable base rate" by considering all of the available evidence and balancing the interests of MPC and the ratepayers. Id. at 924 (Pierce, J ., concurring).

50. On June 11, 2015, both MPC and the MPSC filed motions for rehearing which were denied by the Mississippi Supreme Court on which date the Court also entered its revised

Opinion in this matter. As a result of its Opinion the Mississippi Supreme Court ordered that the MPSC fix the rate as it was prior to March 5, 2013; refund the 18% rate increase to MPC customers; and grant no further rate increases until there was full compliance with the Mississippi Supreme Court's decision.

51. On July 2, 2015, the Court's mandate was issued.

52. On July 7, after receiving the Mississippi Supreme Court's mandate, the MPSC ordered MPC to file a plan for refunding the amounts collected pursuant to the MPSC's "mirror" CWIP Final Order (the Kemper Refund Plan). See, MPSC Order on Remand (July 7, 2015).

53. On July 7, 2015, the MPSC entered its Order on Remand, pursuant to the Mississippi Supreme Court's June 11, 2015 decision, requiring MPC to cease charging the 18% as of July 20, 2015 and to provide a refund plan, with refunds to be paid or credited to the customer's account (at customer's option) by November, 2015. Under the MPSC refund plan, MPC customers was to have their refunds by early December, 2015.

54. On July 10, 2015 MPC filed its fourth request for a Kemper rate increase seeking an increase of approximately 18% based on Kemper's operation as a natural gas facility. (MPC's First Supplemental Filing) This rate increase is the essence a shell game with MPC attempting to replace its loss of the March 5, 2013 18% rate increase with an interim rate increase of 18%.

55. On July 10, 2015, MPC amended its original Notice of Intent to add a new proposed rate increase-the "In-Service Asset  Proposal"-which sought to include in rates

Kemper-related assets that MPC alleged are currently in service. The In-Service Asset Proposal sought to increase rates by 18%, to begin immediately after the mirror CWIP rates were terminated, thereby offsetting the refunds ordered in the Mississippi Supreme Court's mandate.

56. Also on July 10, 2015, MPC requested that the MPSC grant temporary, emergency relief allowing the In-Service Asset Proposal to be implemented immediately "as interim rates, subject to refund, until such time as the MPSC can review the proposal, hold hearings, and render a final decision." Id. at 6. MPC's First Supplemental Filing offered evidence to support its request for emergency relief, but provided no substantive evidence to support its proposal for a permanent rate increase under the In-Service Asset Proposal.

57. On August 12, 2015, the MPSC set a prudency hearing on MPC's In-Service Asset Proposal for November 10, 2015 and entered a scheduling order to govern proceedings on remand. According to the MPSC, the scheduling order was intended to:

> i) ensure the timely and efficient management of all statutory and regulatory requirements applicable to electric utility rate proceedings;
>
> ii) ensure adequate notice of all deadlines to all parties of record; and
>
> iii) establish an orderly procedure for the resolution of this matter.

MPSC Scheduling Order (Aug. 12, 2015).

## IV. Class Action Allegations

58.     Pursuant Fed. R. Civ. P. 23, plaintiffs bring this action on behalf of themselves and the Class, defined as follows:

All individuals and entities, including their predecessors and successors-in-interest, who purchased electrical from MPC from March 5, 2013 to July 20, 2015 maintained by MPC maintained by MPC.

59. Excluded from the Class are: (a) MPC, MPC's member(s), MPC's other affiliates, and their respective predecessors and successors; (b) any person or entity who produces retail electricity in Mississippi; (c) the federal government; (d) legally-recognized Indian Tribes; and (e) any Judge or Magistrate Judge presiding over this action and members of their families.

60. Numerosity: The members of the Class ("Class Members") are so numerous that joinder of all members is impractical. The precise number and identity of Class Members is 186,000 more or less MC electrical customers. However, upon information and belief, plaintiff believes it is substantially in excess of 100. Moreover, upon information and belief, the number and identity of Class Members is ascertainable from MPC' s records and the Class Members may thus be notified of the pendency of this action by first class mail.

61. Commonality: There are questions of law and/or fact common to the Class that predominate over any questions affecting individual Class Members. These questions are capable of classwide resolution, and answering them will resolve issues central to the validity of plaintiffs' claims. These questions include, but are not limited to, the following:

a. Whether the methodology and underlying records used by MPC to identify its electrical customers from March 5, 2013 to Jul 20, 2015 and to calculate statutory interest under Miss. Code Ann. Section 77-3-93 (12)(Rev. 1992) and Section 75-17-1 (Rev. 2001) due to plaintiffs and the Class Members under the MPC Kemper Refund Plan for liquidated sums of money overdue, under Mississippi law?

14

b. Whether the provisions of Mississippi law used by MPC to calculate statutory prejudgment interest owed on the liquidated sums of money overdue and to make interest payments to the plaintiffs and the Class Members comports with state law?

c. Whether the interest rate used by MPC to make refunds to plaintiffs and the Class Members was less than statutory rate set forth in Miss. Code Ann. Sections 77-3-39 (12)(Rev. 1992) and 75-17-1 (Rev. 2001)?

d. Whether the types of fees, costs, and expenses that were charged, directly or indirectly, by MPC to plaintiffs and the Class Members when calculating their interest and refund payments comport to state law?

e. Whether the interest payment paid by MPC to plaintiffs and the Class Members are improper as a matter of law and/or fact?

f. Whether MPC has violated its duty to properly account and pay statutory prejudgment interest pursuant to Miss. Code Ann. Section 77-3-39(12)(Rev. 1992) and 77-17-1 (Rev. 2001) to plaintiffs and the Class Members under the Mississippi law, as a result of the acts and omissions described herein? and

g. Whether the recalculated interest credited to individual customer's account based on the approved annual rate, which is equal to the MPC's weighted average cost of capital, as of December 31, 2015.

62. The common pattern of conduct by the official capacity named state MPSC defendants and MPC (along with the common theories for redressing the deprivation of due process and a hearing misconduct) support the maintenance of this action as a class action

pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure.

63. Typicality: Plaintiffs' claims are typical of the claims of the Class, as all such claims arise out of MPC's uniform practices, including MPC's practice of paying statutory interest based on an interest rate far below the statutory interest rates under Miss. Code Ann. Sections 77-3-39 (12) and 75-17-1.

64. Adequate Representation: Plaintiffs are adequate representatives of the Class and will fairly and adequately protect the interests of the Class. Plaintiffs have retained counsel with experience in class action litigation, including actions involving the underpayments of statutory interest owed under Mississippi law. Plaintiffs and their counsel are committed to prosecuting this action vigorously on behalf of the Class they represent, and have the financial resources to do so. Neither Plaintiffs nor their counsel have any interest adverse to those of the Class.

65. Predominance and Superiority: This class action is appropriate for certification because questions of law and fact common to the members of the Class predominate over questions affecting only individual members and a class action is superior to other available methods for the fair and efficient adjudication of this controversy, since individual joinder of all members of the Class is impracticable. Absent a class action, many members of the Class will find the litigation costs regarding their claims so prohibitive that they effectively would be unable to seek any redress at law. Because of the size of the individual Class Members' claims, many could not afford to seek legal redress or the relief requested for the wrongs set forth herein. A Class Action is the only realistic method available for the fair and efficient adjudication of this controversy. The expense and burden of individual litigation makes it

impracticable for members of the Class to seek redress individually for the wrongful conduct alleged herein. Were each individual Class Member required to bring a separate lawsuit, the resulting multiplicity of proceedings would cause undue hardship and expense for the litigants and the Court, and create the risk of inconsistent rulings that would be contrary to the interest of justice and equity. Absent a class action, MPC will probably continue the improper and wrongful conduct herein described, the Class Members will continue to be damaged by MPC's wrongful conduct, and MPC's violations of the law will continue without remedy.

V. <u>CAUSES OF ACTION</u>:

A.      First Cause of Action: Breach of Contract For Electricity

66.    Plaintiffs restate and incorporate herein by reference all of the allegations contained in the above-numbered paragraphs.

67.    The above-described conduct by MPC constitutes breaches of the express and implied contractual obligations MPC owes to Plaintiffs and the Class Members under their contracts and agreement for electricity rates set by the MPSC.

68. Plaintiffs and the Class Members have been damaged as a proximate result thereof and are entitled to recover their actual and punitive damages from MPC, pre-judgment and post-judgment interest at the maximum lawful rate, and any and all other relief deemed appropriate by the Court, under applicable statutes.

69.    The above-described conduct by MPC constitutes breaches of the express and implied contractual obligations MPC owes to Plaintiffs and the Class Members under their electrical contractual relationships.

17

70. Plaintiffs and the Class Members have been damaged as a proximate result thereof and are entitled to recover their actual damages from MPC, pre-judgment and post-judgment interest at the maximum lawful rate, and any and all other relief deemed appropriate by the Court.

B.      Second Cause of Action:     Sate Action Caused Deprivation Of
                                    Money For Electricity

71.     Plaintiffs restate and incorporate herein by reference all of the allegations contained in the above-numbered paragraphs.

72.     The MPSC exceeded its authority under the Base Load Act by including mirror construction work in progress in the MPC rate base and rates, without constitutionally adequate prudency hearings.

73.     The MPC's petition and request to include filed with the MPSC and the MPSC order for inclusion of mirror construction work in progress in the rate base and electrical rates applied to and imposed upon MPC electrical customers by MPSC order violated the proposed class of MPC electricity ratepayers' due process rights under the United States Constitution and the Mississippi Constitution.

74.     The MPSC lacked legal statutory authority under Mississippi law to enter into the joint motion to approve into a private settlement agreement which was ironed out in private meetings with MPC and without conduct a due process hearing.

75.     The MPSC failed to fulfill its duties and obligations pursuant to statutory directives and under existing Mississippi law and the MPC's 186,000 ratepayers were not accorded due process of law from the beginning.

18

76.     The MPSC did not balance the MPC ratepayers rights and interest with the legal rights of MPC as required by Mississippi law. Miss. Pub. Serv. Comm'n v. Miss. Power Co., 429 So.2d 883, 887 (Miss. 1993). The MPSC failed to provide notice to MPC's 186,000 ratepayers in proceedings related to rate base, rates, rate of return, and prudency hearings.

77.     MPC, a private corporation, acted in concert with the MPSC and was acting under the color of state law.

78.     Title 42 U.S.C. § 1983 imposes liability on every person and corporations acting in concert with persons acting under color of state law that deprives another of rights or privileges secured by the Constitution or the laws of the United States. "To act under color of state law for § 1983 purposes does not require, however, that the defendant be an officer of the state." Earnest v. Lowentritt, 690 F.2d 1198, 1200 (5th Cir. 1982). A private actor can be held liable under § 1983 "if the individual is a 'willful participant in joint action with the State or its agents.' " Id. (quoting Adickes v. S.H. Kress & Co., 398 U.S. 144, 152 (1970)). Here, plaintiffs allege that MPC (a private corporation) is liable under § 1983 for acting under color of state law to deprive plaintiffs of their constitutional right not face and increase in electrical rates with adequate due process of law. For to be held liable under § 1983, the Court must determine if plaintiff alleges sufficient facts to create an inference that MPC's private actions are attributable to the MPSC. To determine whether a private actor's conduct is attributable to the State, courts in the Fifth Circuit apply one or more of the following tests: (1) nexus or joint action test; (2) public function test; and (3) state coercion or compulsion test. See, e.g., Chaney v. Races & Aces, 590 Fed.Appx. 327, 329-30 (5th

Cir. 2014) (applying nexus test to find plaintiff did not allege a conspiracy between state actors and a private entity for purposes of § 1983 liability); Rosborough v. Mgmt. & Training Corp., 350 F.3d 459, 460-61 (5th Cir. 2003) (applying the public function test to find state action in a § 1983 claim against a private prison-management corporation); United States v. Causey, 185 F.3d 407, 415 (5th Cir. 1999) (applying the nexus test to find a nexus between a state official's abuse of power and his private criminal conduct); Under the nexus or joint action test, "[a] non-state actor may be liable under [§] 1983 if the private citizen was a willful participant in joint activity with the State or its Agents' and the plaintiffs allege that there was '(1) an agreement between private and public defendants to commit an illegal act and (2) a deprivation of constitutional rights." Agoh v. Hyatt Corp., 992 F. Supp. 2d 722, 741-42 (S.D. Tex. 2014) (quoting Priester v. Lowndes Cty., 354 F.3d 414, 420 (5th Cir. 2004)) (internal quotation marks omitted). The public function test attributes state action when a private entity "performs a function which is traditionally the exclusive province of the state." Rosborough, 350 F.3d at 460-61 (quoting Wong v. Stripling, 881 F.2d 200, 202 (5th Cir. 1989)). Finally, under the coercion or compulsion test a state "can be held responsible for a private decision [ ] when it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." Bass v. Parkwood Hosp., 180 F.3d 234, 242 (5th Cir. 1999).

   C.  Third Cause of Action:  Request for Declaratory and Injunctive Relief

   79.  Plaintiffs restate and incorporate herein by reference all of the allegations contained in the above-numbered paragraphs 1-78.

80.     The MPC Kemper Plant has only generated electricity using its 730 mega watt natural gas powered capability. A 730 megawatts natural gas plant cost around $900 million dollars.

81.     The plaintiff class needs discovery from MPSC and MPC concerning the true value and worth of MPC's Kemper Plant, to assert additional causes of action.

82.     The plaintiff class believes it has been overcharged for 730 megawatt electrical generating facility and request leave of Court to conduct related discovery as to the true value of the Kemper facility.

83. Plaintiffs and the Class Members have been damaged and are threatened with future damages by MPSC policies, acts, and practices for and on behalf of MPC described above.

84. This Court should enter an order which (a) declares that MPC's above-described policies, acts, and practices concerning the MPC Kemper Plant are wrongful and constitute breaches of the obligations that MPSC and MPC owe to Plaintiffs and the Class Members, and (b) precludes and prohibits the MPSC and MPC from pursuing such wrongful policies, acts and practices in the future. In the absence of such an order, the MPSC and MPC will continue the improper and wrongful conduct and rate increases herein described, Plaintiffs and the Class Members will continue to be damaged by the MPSC and MPC's wrongful conduct, and MPC's violations of the law with respect to the Kemper Plant will continue without adequate remedy.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully demand as follows on behalf of themselves and the

Class:

A. That the Court enter an order certifying Plaintiffs Class, pursuant to Rule 23, appointing Plaintiffs as Class Representatives, and appointing Plaintiffs counsel as Class Counsel;

B. That Plaintiffs and the Class be given a trial by jury;

C. That the Court enter judgment against MPC and in favor of the Class Members for the damages they suffered as a result of the wrongful conduct of the MPSC and MPC alleged herein, to include the total amount of underpayments, of pre-judgment interest thereon at the maximum lawful rate and accruing from and after the time of each underpayment, and post-judgment interest at the maximum lawful rate;

D. That the Court award Plaintiffs and the Class reasonable attorneys' fees and costs of this action;

E. That the Court enter an order for declaratory and injunctive relief precluding and prohibiting MPC from continuing to pursue the wrongful policies, acts and practices described in this Complaint; and

F. That the Court grant Plaintiffs and the Class such other and further legal and equitable relief as the Court deems just and necessary.

SO COMPLAINED, this the 21st day of November, 2018.

Respectfully Submitted,

RAY C. TURNAGE, ET. AL., Plaintiffs


By:   S/ELLIS TURNAGE
ELLIS TURNAGE, Attorney for Plaintiffs

OF COUNSEL:

ELLIS TURNAGE, MSB #8131
TURNAGE LAW OFFICE
108 NORTH PEARMAN AVENUE
POST OFFICE BOX 216
CLEVELAND, MISSISSIPPI 38732
TEL: (662) 843-2811
FAX: (662) 843-6133
eturnage@etlawms.com