IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

RAY C. TURNAGE; REVEREND D.                                    PLAINTIFFS
FRANKLIN BROWNE ; DENNIS D. HENDERSON;
CARLOS WILSON; FRED BURNS; CHARLES BARTLEY;
CLARENCE  MAGEE; LINDA PATRICK-CRAFTON;
BARBARA YOUNG; JUANITA J. GRIGGS; CHERNISE
SEAPHUS; MOUNT CARMEL BAPTIST CHURCH;
PINEBELT COMMUNITY SERVICES, INC;
HALL-FAIRLEY MORTUARY; DEBORAH DEGALDO
And On Behalf Of Themselves And All Others Similarly Situated


V.                                    CIVIL ACTION NO. 3:18-cv-00818-CWR-FKB


SAM BRITTON, Mississippi Public                                    DEFENDANTS
Service Commissioner; CECIL BROWN,
Mississippi Public Service Commissioner;
BRANDON PRESLEY; and MISSISSIPPI
POWER COMPANY; and SOUTHERN
COMPANY


FIRST AMENDED CLASS ACTION COMPLAINT

JURY TRIAL REQUESTED

COME NOW the plaintiffs, on behalf of themselves and all others similarly situated,

by and through counsel, and file their First Amended Class Action Complaint, and allege with

personal knowledge as to their own actions, and upon information and belief as to those of

others, as follows:

I.  Jurisdiction and Venue

1

1.      This Court has original jurisdiction over this action pursuant to 28 U. S. C. §
1331; 28 U. S. C. § 1332(d)(2); 42 U. S. C. Section 1983, pursuant to 28 U. S. C.
Section 1343(a)(3) and (4) to enforce civil rights deprivation under color of state law and
to secure equitable and other prospective declaratory and injunctive relief for ongoing
violations of federal law under the Supremacy Clause.

2.      Pursuant to 28 U.S.C. § 1332(d)(1)(d)(1)(B),  a "'class action' means any
civil action filed under Rule 23 of the Federal Rules of Civil Procedure or similar State statute
or rule of judicial procedure authorizing an action to be brought by one (1) or more
representative persons as a class action." 28 U.S.C. § 1332(d)(1)(B). No Mississippi statute
or codified rule of procedure enacts a version of Rule 23 of the Federal Rules.

3.      Pursuant to 28 U.S.C. § 1332(d), as amended by CAFA, a district court  shall
have original jurisdiction of any putative class action commenced after February 18, 2005 if:
(i) any member of the putative class is a citizen of a state different from any defendant; and
(ii) the amount in controversy exceeds the sum or value of $5,000,000.00, exclusive of
interest and costs. See 28 U.S.C. § 1332(d)(2).

4.      This action was commenced after the effective date of CAFA and is a class
action in which at least one member of the putative class of plaintiffs is a citizen of a state
different from a defendant. 28 U.S.C. § 1332(d)(2)(A).

5.      Accordingly, at least one member of the proposed class is a citizen of a state
different from at least one defendant, so the minimal diversity requirements of CAFA  are
satisfied. See 28 U.S.C. § 1332(d)(2)(A).

2

6.     Plaintiffs request that this Court exercise supplemental jurisdiction over any state law pendent jurisdiction claims to which Paragraph 1 does not apply to pursuant to 28 U. S. C. § 1367(a).

7.     This Court has personal jurisdiction over Defendants Sam Britton, Cecil Brown and Brandon Presley who are elected Mississippi Public Service Commissioners and Mississippi Power Company, Inc. because these defendants are headquartered and/or transact business in and have significant contacts with this judicial district.

8.     Venue in federal cases lies in the district in which any defendant resides or in which a substantial part of the events or omissions giving rise to the claim occurred. 28 U. S. C. § 1391(b)(1). Venue in this district and division of Court is proper under 28 U. S. C. § 1391(b) because the Mississippi Public Service Commission and the official capacity defendant commissioners are located in this division of this district and the conduct and transactions at issue in this matter arose in this division of this district.

## II.  Parties

9.     Plaintiffs Ray C. Turnage, Reverend  Franklin D. Browne, Dennis D. Henderson, Carlos Wilson, Fred Burns, Charles Bartley, Clarence Magee, Linda Patrick-Crafton, Barbara Young, Juanita J. Griggs; Chernise Seaphus, Mount Carmel Baptist Church, Pinebelt Community, Services, Inc; Hall-Fairley Mortuary and Deborah Delgado are MPC retail electric customers and are citizens of the State of Mississippi and the putative class consists of citizens of the State of Mississippi and other states.  Numerous members of the proposed class members are citizens of States other than the State of Mississippi.  MPC's electronic customer

3

database contains electronic discoverable facts, information and data that reveal the actual citizenship of each proposed class member who presently resides in other states than Mississippi to satisfy minimal diversity under CAFA.

10.     Defendant Sam Britton is a resident of the State of Mississippi and is the duly elected member of the PSC who replaced former PSC Commissioner Lynn Posey, who voted to adopt, enact and enforce the March 5, 2013 PSC Mirror CWIP Order. Pursuant to FRCP 25, defendant Britton is substituted for Lynn Posey and is being sued in his official capacity under Ex Parte Young as a member of the PSC, for "prospective equitable relief to end ongoing and continuing violations of federal law" caused by the adoption, enactment, and enforcement of the July 7, 2015 Order on Remand "with interest accruing at MPC's weighted average cost of capital", the July 21, 2015 Kemper Refund Plan and the August 6, 2015 PSC Order Accepting Refund Plan. Defendant Britton maybe served with process of this Court at 501 N. West Street # 201a, Jackson, Mississippi 39201.

11.     Defendant Cecil Brown is a resident of the State of Mississippi and is the duly elected member of the PSC who replaced R. Steven Renfroe who voted to adopt, enact and enforce the March 5, 2013 Mirror CWIP Order. Pursuant to FRCP 25, defendant Brown is substituted for R. Steven Renfroe and is being sued in his official capacity under Ex Parte Young as a member of the PSC for "prospective equitable relief to end ongoing and continuing violations of federal law" caused by the adoption, enactment and enforcement of the July 7, 2015 PSC Order On Remand "with interest accruing at MPC's weighted average cost of capital", the July 21, 2015 Kemper Refund Plan and the August 6, 2015 PSC Order

Accepting Refund Plan. Defendant Brown is the Chairman of the PSC and maybe served with process of this Court at 501 N. West Street # 201a, Jackson, Mississippi 39201.

12.     Defendant Brandon Presley is a resident of the State of Mississippi and is a duly elected member of the PSC who voted against the adoption, enactment and enforcement of the March 5, 2013 Mirror CWIP Order. Defendant Presley is being sued in his official capacity under Ex Parte Young  as a member of the of PSC for "prospective equitable relief to end ongoing continuing violations of federal law" caused by the adoption, enactment and enforcement of the July 7, 2015 PSC Order On Remand "with interest accruing at MPC's weighted average cost of capital" , the July 21, 2015 Kemper Refund Plan and the August 6, 2015 PSC Order Accepting Refund Plan. Defendant Presley maybe served with process of this Court at 501 N. West Street # 201a, Jackson, Mississippi 39201.

13.     Defendant MPC is a corporation organized under the laws of the State of Mississippi with its principal place of business located in Harrison County, Mississippi. MPC's registered agent for process is Jeffrey A. Stone, 2992 West Beach Boulevard, Gulfport, Harrison County, Mississippi and is an electric utility which owns and/or operates the Kemper Plant facilities used to generate, transmit and distribute electricity in a certificated geographical area in twenty-three (23) southeast Mississippi counties.

14.     The Court is empowered to grant declaratory relief by 28 U.S.C. §§ 2201 and 2202 and Rule 57 of the Federal Rules of Civil Procedure.

15.     This Court is empowered to grant preliminary and permanent injunctive relief by, inter alia, 28 U.S.C. § 2202 Fed. R. Civ. P. and Rule 65. This Court has personal

jurisdiction over the named PSC defendants in their official capacities because each PSC official capacity defendant conducts a substantial portion of his duties as an officer of the PSC in the State of Mississippi. The PSC's main office is located in Jackson, Hinds County, Mississippi. The PSC's March 5, 2013 Order to add CWIP for the Kemper Project and the July 7, 2015 Mirror CWIP Remand Order and the July 21, 2015 Kemper Rate Refund Plan were adopted, enacted and enforced by the official capacity defendant and/or their FRCP 25 successors who conduct PSC business at the PSC office building located and situated in Hinds County, in the Northern Division of the United States District Court For the Southern District of Mississippi.

## III. <u>Operative Facts</u>

16.     On January 16, 2009, MPC filed its Certificate Filing in Docket No. 2009-UA-014, including its petition, testimony and supporting documents, as amended and supplemented from time to time, seeking a certificate of public convenience and necessity authorizing MPC to construct, acquire, operate, and maintain a new electric generating facility in Kemper County, Mississippi (the Kemper Project).

17.     On March 1, 2013, MPC filed a Stipulation with the PSC with the intent of resolving the remaining outstanding issues concerning the Company's CWIP revenue requirement calculation.

18.     On March 5, 2013, the PSC issued its Mirror CWIP Order authorizing an increase in MPC electric rates equal to $125 million for 2013,  and escalating to $156 million in 2014 and $56 million in 2015, for a total of $331 Million plus $22 Million in carrying costs.

19.   On June 11, 2015, the Mississippi Supreme Court handed down its June 11, 2015 decision in Mississippi Power Company, Inc. v. Mississippi Public Service Com'n, 168 So. 3d 905, 912-13, ¶17 (Miss. 2015) that invalidated the March 5, 2013 rate increases not authorized by the Act or existing law. A certified copy of the June 11, 2015 opinion and the Mandate are attached to the First Amended Complaint as Exhibits 2 and 3. To remedy the PSC's constitutional violations, the Supreme Court held " on remand, the Commission is hereby instructed to (1) fix by order the rates in existence prior to its order of March 5, 2013; (2) fix no rate increases until the Commission is in compliance with the Court's opinion: and (3) enter an order refunding the monies attributable to the rate increases allowed by the March 5, 2013 Order".  (Emphasis added). The Supreme Court further stated:

> Absent compliance with the Act, no legal authority existed to increase the rates. See Miss. Code Ann. § 77−3− 105(1)(a) (Rev.2009). Ratepayers should not be bound by decisions made by the Commission which do not comport with the laws of our State. This Court will not condone the forced payments for rate increases not authorized by the Act or existing law. On remand, the Commission is hereby instructed to (1) fix by order the rates in existence prior to its order of March 5, 2013; (2) fix no rate increases until the Commission is in compliance with this Court's opinion; and (3) enter an order refunding the monies attributable to the rate increases allowed by the March 5, 2013, Order. The Commission is further instructed to meet its obligations as set forth in the Act regarding all future proceedings.

20.    On July 7, 2015, the PSC entered its Order On Remand pursuant to the Mississippi Supreme Court's mandate and required MPC to file within 14 days a plan for administering the Kemper Refund.  The July 7, 2015 PSC Order On Remand further required "[t]he refund plan should aim to be completed withing ninety (90) days of the Commissioner's approval of the refund plan."

21.    In its July 7, 2015 Order On Remand, the PSC further ordered MPC to cease collecting the "Mirror" CWIP rate, effective with the August 2015 billing cycle, which began on, or about July 20, 2015 and to file a plan for refunding the amounts collected pursuant to the March 5, 2013 "Mirror" CWIP Order. (emphasis added).

22.    On July 21, 2015, MPC filed its Kemper Refund Plan with the PSC in Docket No. 2013-UN-014 "with interest accruing at MPC's weighted average cost of capital". Doc. 9-5, Kemper Refund Plan, page 2, paragraph 2. In MPC's Kemper Refund FAQs dated November 1, 2015, on page 10, the question "will interest be paid on the amount refunded?" was asked and MPC's answer states "Yes, interest will be paid at our after tax WACC (weighted average cost of capital) rate of 9.5% over the entire refund period - (March 2013 - July 2015) and up to November 7 when we begin issuing the refunds."  A copy of the Kemper Refund FAQs is attached hereto and incorporated herein as Exhibit 1 - Kemper Refund FAQs dated November 1, 2015.

23.    On August 6, 2015, the PSC adopted, enacted and enforced the Order Accepting Refund Plan, but modified the Kemper Refund Plan to provide an additional 30 days for MPC to educate consumers and receive their individual choice. According to the provisions of the August 6, 2015 PSC Order Accepting Refund Plan, the completion date of the Kemper Refund Plan was "on or about December 4, 2015".

24.    On June 9, 2016, a Phase-II Special Purpose Audit of the Kemper Refund Plan mandated by the PSC's August 6, 2015 Order Accepting Refund Plan was performed by Topp McWhorter Harver, PLLC and filed with the PSC. The Phase II - Special Purpose Audit

of the Kemper Refund Plan was filed with the PSC on June 9, 2016 and states the Kemper

Refund Plan was "with interest accruing at the Company's [MPC] weighted average cost of

capital." Doc. 9-8, at page 5.

## IV. Class Action Allegations

25.     Pursuant Fed. R. Civ. P. 23, plaintiffs bring this action on behalf of themselves

and the Class, defined as follows:

> All individuals and commercial businesses and governmental entities,
> including their predecessors and successors-in-interest, who paid increased
> rates for retail electric service from MPC from March 5, 2013 to July 20,
> 2015 maintained by MPC under the PSC Final Mirror CWIP Order dated
> March 5, 2013.

26.     Excluded from the Class are: (a) MPC member(s), other affiliates, and their

respective predecessors and successors; (b) any person or entity who produces retail electricity

in Mississippi; (c) the federal government; (d) legally-recognized Indian Tribes; and (e) any

Judge or Magistrate Judge presiding over this action and members of their families.

27.     Numerosity: The members of the Class ("Class Members") are so numerous that

joinder of all members is impractical. The precise number and identity of Class Members is

188,000 more or less MPC electrical customers, with over 300,000 accounts who paid

increased MPC electrical rates under the March 5, 2013 PSC Mirror CWIP Final Order from

March 5, 2013 to July 20, 2015, many if not all of those persons are likely members of the

class. Moreover, upon information and belief, the number and identity of Class Members is

easily ascertainable from MPC' s electronic stored information business records and the Class

Members may thus be notified of the pendency of this action by first class mail, if necessary.

28.     Commonality: The issues regarding liability in this case present common questions of law and fact, with answers that are common to all members of the class. Furthermore, there are questions of law and/or fact common to the Class that predominate over any questions affecting individual Class Members. These questions are capable of classwide resolution, and answering them will resolve issues central to the validity of plaintiffs' claims. These questions include, but are not limited to, the following:

> a. whether MPC's "after tax WACC (weighted average cost of capital) rate of 9.5% over the entire refund period from March 5, 2013 to December 4, 2015 (2.75 years) is the legally correct methodology to compute statutory pre-judgment interest in a PSC rate refund case under Miss. Code Ann. Sections 77-3-39(12) and 75-17-1;
>
> b. whether the interest calculation methodology adopted, enacted and enforced by the PSC official capacity defendants and used by MPC to calculate the amount of pre-judgment interest owed to Plaintiffs and the Class Members caused an underpayment of interest to Class Members under the Kemper Refund Plan;
>
> c. whether the total interest calculation method adopted, enacted and enforced by the PSC official capacity defendants and paid by MPC to plaintiffs and the Class Members is "[t]he legal rate of interest [of] (8%) percent per annum, calculated according to the actuarial method . . ." set forth in Miss. Code Ann. Section 75-17-1 (Rev. 2001); and
>
> d. whether the PSC official capacity defendants' adoption, enactment and enforcement of the July 21, 2015 Kemper Refund Plan and the PSC's August 6, 2015 Order Accepting Refund Plan's interest rate calculation method caused an underpayment of interest?

29.     The issues regarding relief are also common to Plaintiffs and the Class Members as the proposed relief will consist of: (1) a declaration that Sections 77-3-39(12) and 75-17-1 provide the applicable legal rate of interest at 8% per annum compounded; (2) an order from this Court directing and enjoining the PSC official capacity defendants and MPC to use

the interest calculation method provisions in Section 77-3-39(12) and 75-17-1; (3) a declaration that the interest calculation method of 9.55% based on MPC's WACC over the entire 2.75 years results in and constitutes an underpayment of pre-judgment interest between $13.8-$23.5 Million; and (4) declaring that the official capacity PSC defendants' adoption, enactment and enforcement of the PSC's July 21, 2015 Kemper Refund Plan and August 6, 2015 Order Accepting Refund Plan using MPC's 9.55% WACC interest calculation method constitutes an ongoing violation of the Plaintiffs and Class Members' federally protected rights under the federal due process and the takings clause.

30.     Typicality: Plaintiffs' claims are typical of the claims of the Class Members, as all claims arise out of the PSC official capacity defendants' adoption, enactment and enforcement of the interest calculation method in the Kemper Refund Plan and the August 6, 2015 Order Accepting Refund plan using  MPC's 9.55% WACC methodology that caused an underpayment of pre-judgment interest.

31.     Adequate Representation: Plaintiffs are adequate representatives of the Class Members and will fairly and adequately protect the interests of the Class Members. Plaintiffs have retained counsel with 36 years of experience in federal court class action litigation and numerous state and federal cases involving the payment of statutory pre- and post-judgment interest owed under Mississippi law. Plaintiffs and their counsel are committed to prosecuting this action vigorously on behalf of the Class Members and have the financial resources to do so. Neither Plaintiffs nor their counsel have any interests adverse or antagonistic to or in conflict with the interests of the Class Members.

32.   Plaintiffs will fairly and adequately represent and protect the interests of all Class Members.

33.    The PSC official capacity defendants and MPC have no unique defenses against the Plaintiffs that would interfere with the Plaintiffs' representation of the Class Members.

34.   Plaintiffs have engaged counsel with experience prosecuting class actions, since 1984 in Martin v. Allain, 658, F. Supp. 1183 (S.D. Miss. 1985) and Martin v. Mabus, 700 F. Supp. 327 (S.D. Miss. 1988) (FRCP 23(a) and (b)(2) a successful class in a voting rights case concerning the election of state court trial judges.

### E. Rules 23(b)(1) Requirements

35.    The requirements of Rule 23(b)(1)(A) are satisfied because the prosecution of separate actions by Class Members would create a risk of establishing incompatible standards of conduct for the named Defendants.

36.    The requirements of Rule 23(b)(1)(B) are satisfied because adjudications of these claims by individual Class Members would, as a practical matter, be dispositive of the interest of the other members not parties to the actions, or substantially impair or impede the ability of other Class Members to protect their interests.

### F. Rule 23(b)(2) Requirements

37.    Class action status is also warranted under Rule 23(b)(2) because the named defendants have acted or refused to act on grounds generally applicable to all Class Members, thereby making appropriate final injunctive, declaratory, or other appropriate equitable relief including incidental money damages flowing from the declaratory and injunctive relief with

respect to all Class Members as a whole. Plaintiffs and the Class Members seek an injunction ordering the PSC official capacity defendants to apply Mississippi's 8% per annum compounding annually pre-judgment interest provisions to correct the underpayment of interest MPC owes the Class Members under the Kemper Refund Plan. The PSC official capacity defendants' adoption, enactment and enforcement of MPC's 9.55% interest rate calculation method for the Kemper Refund Plan "is such that it can be enjoined or declared unlawful only as to all of the class members or to none of them." Wal-Mart Stores, Inc. v. Dukes, 564 U. S. 338, 360 (2011). This class action case can be certified for class treatment under Rule 23(b)(2) because the relief of correcting the interest calculation method under the Kemper Refund Plan is in nature injunctive relief to the Class Members as a whole.

## G. Rule 23(b)3) Requirements

38.    If the Class is not certified under Rule 23(b)(1) or (b)(2) then certification under (b)(3) is appropriate because questions of law or fact common to all Class Members predominate over any questions affecting only individual members. The common issues of law or fact that predominate over any questions affecting only individual members include:

> a. whether MPC's "after tax WACC (weighted average cost of capital) rate of 9.5% over the entire refund period from March 5, 2013 to December 4, 2015 (2.75 years) is the legally correct methodology to compute statutory prejudgment interest in a PSC rate refund case under Sections 77-3-39(12) and 75-17-1;
>
> b. whether the interest calculation methodology adopted, enacted and enforced by the PSC official capacity defendants to calculate pre-judgment interest owed to Plaintiffs and the Class Members causes an ongoing underpayment of interest under the July 21, 2015 Kemper Refund Plan and the August 6, 2015 PSC Order Accepting Refund Plan;

13

c. whether the methodology approved, adopted and enacted by the PSC official capacity defendants and used by MPC to calculate interest and to make refunds to plaintiffs and the Class Members under the Kemper Rate Plan is less than the 8% per annum compounded annually in Sections 77-3-39 (12) and 75-7-1; and

d. whether the PSC's July 21, 2015 Kemper Refund Plan and the PSC's August 6, 2015 Order Accepting Refund Plan adopted, enacted and enforced by the PSC official capacity defendants is presently causing ongoing violations of federal law and result in a deprivation of federal rights under due process and the takings rights the plaintiffs and Class Members of interest owed under the Kemper Refund Plan?

39.    A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

A. Individual class members do not have an interest in controlling the prosecution of these claims in individual actions rather than as a class action because the equitable relief sought by any Class member will either inure to the benefit of the Plan or the class member equally;

B. Individual Class members also do not have an interest in controlling the prosecution of these claims because the monetary relief that they could seek in any individual action is identical to the relief that is being sought on their behalf herein;

C. At the time that the present litigation was originally filed, there was no other litigation by any other Class members concerning the issues raised in this litigation;

D. This litigation is properly concentrated in this forum, which is where the PSC is headquartered and where the official capacity defendants are headquarted; and

E. There are no difficulties managing this case as a class action.

## V. <u>CAUSES OF ACTION</u>:

A.    First Cause of Action: Deprivation Of Procedural And Substantive Due Process Under The Fourteenth Amendment To The United States Constitution

14

40.     Plaintiffs restate and incorporate herein by reference all of the allegations contained in the above-numbered paragraphs.

41.     The hereinabove described actions and conduct of the PSC official capacity defendants and MPC constitute a deprivation of procedural and substantive due process guaranteed by the due process clause and the takings clause of the United States Constitution under the Fourteenth Amendment.

42.     Pursuant to the statutory provisions of 28 U.S.C. Section 1738, a final state court judgment is given the same preclusive effect in federal court as they are in the court of the State of Mississippi in which the judgment originated. The certified copy of the Mississippi Supreme Court decision dated June 11, 2015 and the Mandate dated July 2, 2015 in MPC v. MPSC, 168 So. 3d 905 (Miss. 2015) are attached hereto as Exhibits 2 and 3 and are binding on PSC official capacity defendants and MPC in this subsequent proceeding.

43.     According to the Mississippi Supreme Court's June 11, 2015 decision, the PSC exceeded its authority under the Base Load Act by approving, adopting and enacting the March 5, 2013 Mirror CWIP Order and including mirror construction work in progress in the MPC rate base and rates, without constitutionally adequate prudency hearings.

44.     According to the Mississippi Supreme Court's June 11, 2015 decision, MPC's petition for inclusion of mirror construction work in progress filed with the PSC and the PSC's Order for inclusion of CWIP in the rate base and electrical rates applied to and imposed upon MPC electrical customers by the March 5, 2013 PSC Order violated the procedural due process rights of the plaintiffs and proposed class of MPC electricity ratepayers.

15

45.    According to the Mississippi Supreme Court's decision, the PSC lacked legal statutory authority under Mississippi law to enter into the joint motion to approve into a private settlement agreement which was ironed out in private meetings with MPC and without a due process hearing being conducted.

46.    According to the June 11, 2015 Mississippi Supreme Court's decision in MPCI v. MPSC, 168 So. 3d 905 (Miss. 2015), the PSC failed to fulfill its duties and obligations pursuant to statutory directives under the Base Load Act and under existing Mississippi law and the MPC's 188,000 ratepayers were not accorded due process of law from the beginning.

47.    According to the June 11, 2015 Mississippi Supreme Court decision, the PSC did not balance the MPC ratepayers rights and interest with the legal rights of MPC as required by Mississippi law. Miss. Pub. Serv. Comm'n v. Miss. Power Co., 429 So.2d 883, 887 (Miss. 1993). Under Mississippi law, collateral estoppel precludes parties "from relitigating a specific issue [1] actually litigated, [2] determined by, and [3] essential to the judgment in a former action...." Norman v. Bucklew, 684 So. 2d 1246, 1254 (Miss. 1996), overruled on other grounds Jones v. Fluor Daniel Servs. Corp., 32 So. 3d 417, 422 (Miss. 2010). The use of offensive collateral estoppel requires a valid and final judgment. The June 11, 2015 Mississippi Supreme Court decision and Mandate are attached hereto as Exhibits 2 and 3.

48.    MPC is  a corporation organized and existing under Mississippi law acted in concert with the PSC official capacity defendants in the adoption, enactment and enforcement of the Kemper Refund Plan and the interest calculation method used in the Kemper Refund Plan and was acting under the color of state law. By letter dated July 21, 2015, MPC and its

16

attorney, the Honorable Ben H. Stone drafted the Kemper Refund Plan and submitted the document to the PSC in compliance with the PSC's Order On Remand issued on July 7, 2015. Doc. 9-5, page 1.

49.    Title 42 U.S.C. § 1983 imposes liability on every person and corporation acting in concert with persons acting under color of state law that deprives another of rights or privileges secured by the Constitution or the laws of the United States. To act under color of state law for § 1983 purposes does not require a private corporate defendant to be an officer of the state. A private actor such as MPC can be held liable under § 1983 if MPC was a willful participant in joint action with the PSC official capacity defendants and agents under federal law.

50.    MPC (a private corporation) is liable under § 1983 for acting under color of state law in concert with the PSC official capacity defendants in the adoption, enactment and enforcement of the interest rate calculation method to underpay and deprive the Plaintiffs and Class Members of statutory interest in the amount of $13.8-$23.5 Million on the Kemper Refund Plan owed under Sections 77-3-39(12) and 75-17-1 on the increased electrical rates paid by Plaintiffs and Class Members from March 5, 2013 to December 4, 2015.

51.    Under the nexus or joint action test, a non-state actor such as MPC in this civil action may be liable under Section 1983 if MPC was a willful participant in joint activity with state actors and agents and the plaintiffs allege and prove that there was (1) an agreement between private and state actors defendants to commit an illegal act and (2) a deprivation of constitutional rights. In the June 11, 2015 decision, the Mississippi Supreme Court's decision

concluded that:

> MPC not only sought rate increases but separately requested that the long-range rate-impact information furnished to the Commission be kept confidential, a direct violation of Section 77–3–37, which requires that information regarding changes in rates be "kept open to public inspection." Miss.Code Ann. § 77–3–37(1) (Rev.2009). The Commission improperly determined rate-impact information to be confidential, concealing from the ratepayers the amount of the projected increases. The Commission improperly sealed information to which the public was entitled. The Commission and MPC claim that, since a specific rate increase was not requested in the initial petition, it was proper to seal that information. That argument must fail, because the public has a right to know when and how much its rates will be increased at all stages of a proceeding. The Commission's decision to govern in a cloak of secrecy and grant confidentiality to rate-impact information was arbitrary and capricious.

> .            .            .

> The Agreement also provided that the customers (ratepayers), who ultimately bear the majority of the risks of the project, would be credited with ten percent of any royalties derived from the sale of "TRIG ™ technology in the commercial electric power generation market," although the Agreement fails to explain the allocation of the remaining ninety percent. The Settlement Agreement was the first public disclosure of that separate agreement.

> No authority exists for the Commission to conduct public business in private. Pursuant to Section 77–2–13(4)(a), the Commission is forbidden from all ex parte communication regarding a "contested proceeding." The argument that the case was on appeal is without merit. The private meetings clearly violate the statutes governing the Commission. The public has a right to see and hear its business being conducted. The rate increase resulting from the private agreement to dismiss MPC's appeal and facilitate a refiling resulted in the increases being contested today. Because the Commission lacked authority to enter into a private settlement agreement, the agreement is unenforceable.

Id. at 915 at ¶23, 25-26. These factual findings and conclusions are to be given preclusive

effect in this subsequent proceeding, under Mississippi's collateral estoppel rules set forth

hereinabove.

> B.      Second Cause of Action: A Per Se Takings Clause of the Fifth Through

The Fourteenth Amendment

52.     Plaintiffs and the Class Members restate and incorporate herein by reference all of the allegations contained in the above-numbered paragraphs 1-51.

53.      The Takings Clause of the United States Constitution states "private property [shall not] be taken for public use, without just compensation." U. S. Const. Amend. V. The Takings Clause of the United States Constitution is binding on the states through the Fourteenth Amendment.

54.     Plaintiffs and the Class Members have a vested property right to pre-judgment interest at 8% per annum, calculated according to the actuarial method accruing on the $331 Million liquidated and overdue sums under the Kemper Refund Plan owned by the Plaintiffs and Class Members pursuant under federal and Mississippi law.

55.     The PSC official capacity defendants' adoption, enactment and enforcement of the Kemper Refund Plan "with interest accruing at the MPC's weighted average cost of capital (9.55%) over the entire 2.75 years (March 5, 2013-December 4, 2015) resulted in and caused an underpayment of interest in the amount of $13.8-$23.5 Million and have substantially and materially impaired and diminished the vested property rights of the Plaintiffs and Class Members.

56.     The PSC official capacity defendants' adoption, enactment and enforcement of the PSC July 7, 2015 Order On Remand, the July 21, 2015 Kemper Refund Plan submitted by MPC and the PSC's August 6, 2015 Order Accepting the Kemper Refund Plan with "interest accruing at MPC's weighted average cost of capital (9.55%) over the entire 2.75

years (March 5, 2013-December 4, 2015) constitute and amount to a takings per se of the Plaintiffs and Class Members' interest without just compensation, in violation of the Fifth Amendment to the United States Constitution.

57.     Through the adoption, enactment and enforcement of the July 7, 2015 PSC Order on Remand, the July 21, 2015 Kemper Refund Plan drafted and submitted by MPC to the PSC and the PSC's August 6, 2015 Order Accepting the Kemper Refund Plan, the PSC official capacity defendants' administration, implementation and enforcement of the Kemper Refund Plan caused MPC's underpayment and confiscation of Plaintiffs and Class Members' statutory pre-judgment interest without just compensation and violated Plaintiffs and the Class Members' "due process" and "takings" clause rights under the Fifth and Fourteenth Amendments to the United States Constitution. Horne v. Department of Agriculture, 133 S. Ct 2419, 2428 (2015).

58.     The Takings Clause of the Fifth Amendment through the Fourteenth Amendment prohibit states from taking private property for public use without just compensation.

59.     Core common law property rights pre-date the United States and the Mississippi Constitution are protected by the Takings Clause.

60.     The common law for more than 250 years has recognized the property right that an owner of funds held in an account owns the interest that is earned on those deposited funds.

61.     The common law rule "interest follows principal" recognizes a protected

property interest in earned interest income.

62.    The common law rule and also the industry standard mandate that interest is earned on funds held in an account from the date of deposit to the date of withdrawal.

63.    Based on these common law rules concerning interest which are protected by the United States Constitution and the Mississippi Constitution, Plaintiffs and Class Members have a protected property right in statutory pre-judgment interest under the Kemper Refund Plan that accrued on the increased electrical rates paid from March 5, 2013 to December 4, 2015. Brown v. Legal Found. Of Wash, 538 U.S. 216, 233 (2003).

64.    No statute, rule or practice could authorize the PSC official capacity defendants and MPC to underpay or cause a takings per se of the statutory pre-judgment interest at 8% per annum under the actuarial method from Plaintiffs and Class Members  without violating and effectuating a takings per se under the Takings Clause of the Fifth Amendment enforceable through the Fourteenth Amendment against the PSC official capacity defendants and MPC.

65.    The pre-judgment interest provisions in Sections 77-3-39(12) and 75-17-1 create property rights that are protected by the United States Constitution, in favor of the Plaintiffs and Class Members.

66.    Sections 77-3-39(12) and 75-17-1 mandate that Plaintiffs and Class Members receive interest  on their Kemper Refund at 8% per annum, under the actuarial method under Sections 77-3-39(12) and 75-17-1.

67.    Plaintiffs have a statutorily created and constitutionally protected property right to the interest earned on the Kemper Refund Plan at the stated rate of 8% per annum under

the actuarial method.

68.     The industry standard and the common law rule dictate that the pre-judgment statutes under Mississippi law pronounce that the owner of funds on deposit in an interest-bearing account earns interest on the funds from the date of deposit to the date of withdrawal, i.e., daily interest.

69.     Due to and as a result of the PSC official capacity defendants' adoption, enactment and enforcement of the July 7, 2015 PSC Order On Remand, the July 21, 2015 Kemper Refund Plan submitted by MPC to the PSC and the August 6, 2015 Order Accepting Refund Plan, MPC did not pay the Plaintiffs and Class Members statutory pre-judgment under Section 77-3-39(12) and 75-17-1 at 8% per annum under the actuarial method (interest compounded annually), but paid interest of 9.5% based on MPC's WACC over the 2.75 years, from March 5, 2013 to December 4, 2015 when the last Kemper Refund checks were mailed.

70.     Under the July 7, 2015 PSC Order on Remand, the July 21, 2015 Kemper Refund Plan submitted by MPC to the PSC official capacity defendants by letter dated July 21, 2015 and the August 6, 2015 Order Accepting Refund Plan, plaintiffs and the Class Members received $13.8-$23.5 Million (Table 2) less than the 8% annual interest rate under the actuarial method (compounded annually) in Sections 77-3-39(12) and 75-17-1. See, Doc. 3, page 2 of 7, paragraph 5 (Supplemental Declaration of Mark A. Cohen).

C.     Third Cause of Action: Violation Of The Mississippi Consumer Protection Act

71.     Plaintiffs reallege the allegations contained in paragraphs 1-70, inclusive, of this

First Amended Complaint as if fully set forth herein.

72.     MPC's actions, conduct and involvement in the interest rate calculation method for the Kemper Refund Plan are in violation of the letter and spirit of the  Mississippi Consumer Protection Act, Miss. Code Ann. Section 75-24-5 (Rev. 1974).

73.     As set forth herein, MPC committed illegal, unauthorized and tortious conduct detrimental to the Plaintiffs and Class Members by the use of the interest calculation method for the Kemper Refund Plan that caused an underpayment in the amount of $13.8-$23.5 Million.

74.     Public utilities have a guaranteed customer base, a guarantee of no competition and a guaranteed opportunity to earn a return up to an allowed level. In exchange for these public benefits, not conferred upon other businesses, utilities must fulfill their inherent duty to serve the public.

75.     The laws of Mississippi impose certain indelible obligations upon public utilities.

76.     MPC is the sole electric public utility provider to electric consumers in twenty-three (23) southeast Mississippi counties. As such, MPC is duty-bound to comply with all laws, rules and regulations regarding its status as a public utility. Specifically, MPC must comply with the statutes bestowing certain authority and obligations on the PSC, as well as the rules and regulations of the PSC. The rules and regulations include, but are not limited to, Miss. Code § 77-1-43(2), and Rule 17 of the PSC's Rules of Practice and Procedure (hereinafter "PSC Rules").

77.     Pursuant to Miss. Code §§ 97-7-11 and -13 and common law, MPC has an

obligation to provide accurate, truthful and complete information to the PSC and to customers in connection with the Kemper Refund Plan. MPC may not mislead the PSC or customers as to the true nature of the interest rate calculation method of the Kemper Refund Plan.

78.    MPC, like all entities engaged in business in Mississippi, have a duty to comply with Miss. Code § 75-24-1, et seq. to conduct their business affairs in a fair and honest manner and to refrain from unfair or deceptive trade practices affecting commerce.

79.    MPC also has a duty to deal in good faith and fairly with its retail electric customers, including the State and other governmental entities as ratepayers. MPC possesses a far superior bargaining position with respect to its customers regarding the charges it imposes upon them relating to the acquisition of electricity and other charges.

80.    This Court should enter a preliminary injunction enjoining MPC to pay statutory pre-judgment interest on the Kemper Refund Plan to the Plaintiffs and Class Members at the legal rate of eight (8%) percent, compounded annually under Sections 77-3-39(12) and 75-17-1 in a PSC refund case under Mississippi law.

D.    Fourth Cause of Action: Gross Negligence, Reckless Conduct and Intentional Conduct

81.    Plaintiffs reallege the allegations contained in paragraphs 1-80, inclusive, of this First Amended Complaint as if fully set forth herein.

82.    MPC's actions, conduct and involvement in the interest rate calculation method for the Kemper Refund Plan when considered as a whole amount to gross negligence, reckless and an intentional disregard of the Plaintiffs and Class Members' statutory right to pre-judgment interest on the Kemper Refund Plan under Section 75-17-1 and Mississippi judicial

decisions interpreting the pre-judgment interest statutes.

83.    MPC's actions, conduct and involvement in the interest rate calculation method for the Kemper Refund Plan caused an underpayment of statutory pre-judgment interest to the Plaintiffs and Class Members in the amount of $13.8-$23.5 Million. MPC's actions, conduct and involvement in the interest calculation method on the Kemper Refund Plan were committed with such grossness and recklessness as to evidence a complete and utter indifference as to the consequence of its actions and conduct as a public utility operating under the Base Load Act, the PSC's Rules and Regulations and all statutes applicable to electrical rate refunds ordered by the PSC.

E.    Fifth Cause of Action: Bad Faith

84.    Plaintiffs reallege the allegations contained in paragraphs 1-83, inclusive, of this First Amended Complaint as if fully set forth herein.

85.    MPC had a duty to exercise good faith in dealing with the Plaintiffs and Class Members in the application and selection of interest rate calculation method for the Kemper Refund Plan in a rate refund case. MPC's willful refusal to pay statutory pre-judgment interest on the Kemper Refund Plan to the Plaintiffs and Class Members was arbitrary, capricious and constitutes bad faith. MPC's actions and conduct constitute the independent tort of bad faith refusal to pay statutory pre-judgment interest in that MPC failed to fully pay the 8% interest compounded annually under Section 75-17-1, without legitimate or arguable reason for doing so.

86.    MPC's bad faith is evidenced by the fact that, at all times hereto, MPC knew

that Section 77-3-39(12)'s reference to "the lawful rate" referred to and was defined by Section 75-17-1 and that the Plaintiffs and Class Members were entitled to 8% per annum compounded annually on the Kemper Refund Plan and the law, as well as the actions of MPC as set forth in the paragraphs above and below. Nevertheless, acting with conscious disregard for the Plaintiffs and Class Members' rights and with the intention of causing an underpayment of interest in the amount of $13.8-$23.5 Million to the Plaintiffs and Class Members, MPC willfully used an incorrect interest rate calculation method. MPC was obligated to fully pay the Plaintiffs and Class Members 8% interest per annum compounded annually. MPC lacked an arguable or legitimate basis in law and fact for its refusal to pay 8% per annum compounded annually to the Plaintiffs and Class Members interest under the Kemper Refund Plan. MPC knew there was no arguable, legitimate or justifiable basis for its refusal to fully pay the Plaintiffs and Class Members the correct amount of statutory interest. Further, MPC acted with malice and/or gross negligence/reckless disregard to the Plaintiffs and Class Members' rights under the Kemper Refund Plan and under Mississippi law.

87.     At all material times, MPC owed to the Plaintiffs and the Class Members as electricity customers under the Kemper Refund Plan, a non-delegable, express and implied duties, to at all times and in all things, act in good faith and with fair dealing toward the Plaintiffs and Class Members. Along with the implied duty of good faith and fair dealing, MPC owed at all times a duty to: (1) apply Section 75-17-1 as the interest rate calculation method for the Kemper Refund Plan to the Plaintiffs and Class Members as electricity customers; (2) pay the statutory pre-judgment interest owed to the Plaintiffs and Class Members and to keep

the customers informed every step of the way; and (3) give as much if not greater consideration to the financial interests of the Plaintiffs and Class Member customers as MPC gave to its own financial interests.

88.    MPC breached the aforementioned duties, including the overarching duty to exercise good faith and fair dealing with the Plaintiffs and Class Members as electricity customers and in the implementation of the Kemper Refund Plan. MPC's bad faith is evidenced by all of the facts and allegations set forth above in this First Amended Complaint, together with the following non-exclusive actions or inactions by MPC which were perpetuated with evil motive or with reckless indifference to the rights of the Plaintiffs and Class Members:

a. MPC's intentional or reckless failure to attempt in good faith to effectuate a prompt, fair and equitable settlement of the Plaintiffs and Class Members' rate refunds under the Kemper Refund Plan;

b. MPC's intentional or reckless refusal to pay the Plaintiffs and Class Members pre-judgment interest calculated under Section 75-17-1 under the Kemper Refund Plan;

c. MPC's intentional or reckless failure to properly calculate the Plaintiffs and the Class Members' pre-judgment interest and to pay the Plaintiffs and Class Members the full amounts owed to them under the Kemper Refund Plan;

d. MPC's intentional or reckless failure to fully inform the Plaintiffs and Class Members of their pre-judgment interest rights under the Kemper Refund Plan;

e. MPC's intentional or reckless concealment from the Plaintiffs and Class Members their statutory right to pre-judgment interest calculated under Section 75-17-1;

f. MPC's intentional or reckless failure to pay all amounts due and owing under the Kemper Refund Plan, with no reasonable or justifiable basis;

27

g. MPC's underpayment of $13.8-$23.5 Million less than the amount actually owed in an effort to deprive the Plaintiffs and Class Members of their statuory interest  rights under the Kemper Refund Plan;

h. Other acts and omissions to be proven at trial.

89.    MPC's breach of the duty to exercise good faith and fair dealing was the direct and proximate cause of the underpayment of $13.8-$23.5 Million pre-judgment interest under the Kemper Refund Plan sustained by the Plaintiffs and Class Members.

90.     MPC knew, or reasonably should have known, that the Plaintiffs and Class Members were statutorily entitled to 8% pre-judgment interest compounded annually on the money due them under the Kemper Refund Plan. Nevertheless, acting with conscious disregard for the rights of the Plaintiffs and Class Members and with the intention of causing or willfully disregarding the probability of causing an underpayment of $13.8-$23.5 Million, MPC consciously underpaid pre-judgment interest on the Kemper Refund Plan rightfully due the Plaintiffs and Class Members. In so acting, MPC intended to and did injure the Plaintiffs and Class Members, in order to protect its own financial interests.

91.    As a result of MPC's breach of duty to exercise good faith and fair dealing and the bad faith $13.8-$23.5 Million underpayment of statutory pre-judgment interest under Section 75-17-1, as required by Mississippi law on the Kemper Refund Plan, the Plaintiffs and Class Members are entitled to a judgment against MPC for actual, compensatory, consequential, bad faith and punitive damages, plus court costs, attorney's fees, and pre- and post-judgment interest at the legally allowable limit.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and Class Members respectfully demand as follows on behalf of themselves:

A. That the Court enter an order certifying the Plaintiffs Class, pursuant to Rule 23(b)(2) or other provisions of Rule 23(b) and appointing Plaintiffs as Class Representatives, and appointing Plaintiffs' counsel as Class Counsel;

B. That the Plaintiffs and Class Members be given a trial by jury;

C. The Court enter an order declaring that the applicable pre-judgment interest rate calculation method governing the Kemper Refund Plan is set forth in Sections 77-3-39 (12) and 75-17-1;

D. The Court enter an injunction against the PSC official capacity defendants granting prospective declaratory and injunctive relief to enjoin the ongoing violations of federal law and to further enjoin the PSC official capacity defendants and MPC to calculate pre-judgment interest on the Kemper Refund Plan at 8% per annum, compounded annually, as set forth in Section 75-17-1.

E. That after a decision on the merits of this civil action the Court should enter monetary judgment in favor of the Plaintiffs and Class Members against MPC for actual and punitive damages sustained as a result of MPC's actions, conduct and involvement in the interest calculation method that caused an underpayment $13.8-$23.5 Million of pre-judgment interest on the Kemper Refund Plan accruing from March 5, 2013 to the date MPC pays all pre-judgment interest owed and post-judgment interest at the lawful rate under Section 75-17-17 on the entry of final judgment in this civil action;

F. That the Court award the Plaintiffs and Class Members reasonable attorneys' fees and costs of this action;

G. That the Court grant the Plaintiffs and Class Members such other and further legal and equitable relief as the Court deems just and necessary.

SO COMPLAINED, this the 14th day of March , 2019.

Respectfully Submitted,

RAY C. TURNAGE ET AL., Plaintiffs

By:   S/ELLIS TURNAGE
       ELLIS TURNAGE, Attorney for Plaintiffs

OF COUNSEL:

ELLIS TURNAGE, MSB #8131
TURNAGE LAW OFFICE
108 NORTH PEARMAN AVENUE
POST OFFICE BOX 216
CLEVELAND, MISSISSIPPI 38732
TEL: (662) 843-2811
FAX: (662) 843-6133
eturnage@etlawms.com

## CERTIFICATE OF SERVICE

I, ELLIS TURNAGE, Attorney for Plaintiffs do hereby certify that I have this day served a true and correct copy of Plaintiffs' First Amended Complaint electronically with the Clerk of the Court using the ECF system, which sent notification of such filing to the following:

Hon. Jonathan P. Dyal
jdyal@balch.com

Hon. Jason Tompkins
jtompkins@balch.com

Attorneys for Defendant Mississippi Power Company

Hon. Justin L. Matheny
jmath@ago.state.ms.us
Attorney for Defendant Mississippi Public Service Commissioners

This the 14th day of March, 2019.

                                           s/Ellis Turnage
                                             ELLIS TURNAGE