**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

**RAY C. TURNAGE,** *et al.*                                                    **PLAINTIFFS**

**V.**                                                    **CAUSE NO. 3:18-CV-818-CWR-FKB**

**BRENT BAILEY,** *et al.*                                                    **DEFENDANTS**

## <u>ORDER</u>

Before the Court is Defendant Mississippi Power Company's (MPC) Motion to Dismiss. For the following reasons, the Motion is granted.

**I.      Background**

MPC is a private Mississippi corporation and electric utility that generates, transmits and distributes electricity to retail customers in 23 counties in Mississippi. Plaintiffs Ray C. Turnage, Reverend D. Franklin Browne, Dennis D. Henderson, Carlos Wilson, Fred Burns, Charles Bartley, Clarence Magee, Linda Patrick-Crafton, Barbara Young, Juanita J. Griggs, Chernise Seaphus, Mount Carmel Baptist Church, Pinebelt Community Services, Inc., Hall-Fairley Mortuary, and Deborah Delgado are residents of Mississippi or Mississippi entities who buy electricity from MPC.

This case started in March 2013 when, "[i]n order to construct a new power generation plant in Kemper County, Mississippi Power Company sought and obtained the [Mississippi Public Service Commission's] approval to raise its rates." *Mississippi Power Co. v. Mississippi Pub. Serv. Comm'n*, 168 So. 3d 905, 924 (Miss. 2015) (Dickinson, J., dissenting). After extensive litigation, the Mississippi Supreme Court found that MPC's customers were wrongfully forced to pay for the construction. *Id.* at 916. The Court ordered the Mississippi Public Service Commission to correct

the rates, stay rate increases, and refund MPC's customers for monies attributable to the rate increases. *Id.* at 912.

On July 7, 2015, the Commission ordered MPC to file a refund plan in accordance with the ruling. *See In Re: Notice of Intent of Mississippi Power Co. for A Change in Rates Related to the Kemper Cty. IGCC Project*: *Order on Remand*, No. 2013UN14, 2015 WL 4205192, at *4 (July 7, 2015). Mississippi Power did so 14 days later. *See* Docket No. 23-7.

At a hearing held on August 6, 2015, the Commission approved and adopted MPC's refund plan. *See In Re: Notice of Intent of Mississippi Power Co. for A Change in Rates Related to the Kemper Cty. IGCC Project: Order Accepting Refund Plan*, No. 2013UN14, 2015 WL 4880634 (Aug. 6, 2015). According to a third-party audit, the refund plan, also known as the "Kemper Refund Plan[,] began with the period which encompassed the first billing cycle of April 2013 (March 19, 2013) . . . and ended May 27, 2016, the date through which refund checks cleared and remaining refund checks outstanding are reported." Docket No. 23-6 at 4.

Plaintiffs filed this class action complaint against MPC and the Public Service Commissioners on November 21, 2018, and amended their class action complaint on March 14, 2019. The present version alleges that MPC violated their "procedural and substantive due process [rights] under the Fourteenth Amendment" through (1) the March 2013 order increasing rates to construct the Kemper County plant and (2) the "adoption, enactment and enforcement of the interest rate calculation method" governing the Kemper Refund Plan. Plaintiffs contend that the interest rate calculation method underpaid the Plaintiffs and deprived them of "statutory interest in the amount of $13.8 - $23.5 Million." They also claim that the alleged underpayment constituted a taking under the Fifth and Fourteenth Amendments. Plaintiffs then make the following state-law claims against MPC: violation of the Mississippi Consumer Protection Act; gross negligence,

reckless conduct, and intentional conduct; and bad faith refusal to pay statutory pre-judgment interest. They seek monetary damages, declaratory relief, and injunctive relief.

MPC contends that the amended complaint should be dismissed under Federal Rules of Civil Procedure 12(b)(1) and (b)(6). It argues that the Court lacks subject matter jurisdiction over the federal claims under the Johnson Act, 28 U.S.C. § 1342, and lacks jurisdiction over the state claims under an exception to the Class Action Fairness Act (CAFA), 28 U.S.C. § 1332(d). In the alternative, MPC argues that the claims are untimely or otherwise fail on the merits.

## II.    Legal Standards

### A.    Federal Rule of Civil Procedure 12(b)(1)

Rule 12(b)(1) allows a party to seek dismissal based on a lack of subject matter jurisdiction. "Lack of subject matter jurisdiction may be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Ramming v. United States,* 281 F.3d 158, 161 (5th Cir. 2001) (citation omitted). The plaintiff, as the party asserting jurisdiction, bears the burden of proof that jurisdiction exists. *Id.*

If the defense makes a "facial attack" upon subject matter jurisdiction by "fil[ing] a Rule 12(b)(1) motion, the trial court is required merely to look to the sufficiency of the allegations in the complaint because they are presumed to be true. If those jurisdictional allegations are sufficient the complaint stands." *Paterson v. Weinberger,* 644 F.2d 521, 523 (5th Cir. 1981).

A defendant may make a "factual attack" upon the court's subject matter jurisdiction by submitting "affidavits, testimony, or other evidentiary materials." *Id.*; *see, e.g.*, *Walton v. Allied Enters., No.* 3:04-CV-818, 2007 WL 2917026, at *2 (S.D. Miss. Oct. 5, 2007) (concluding that entity was arm of the state based upon state official's affidavit). When a defendant makes a factual

attack, the plaintiff "is also required to submit facts through some evidentiary method and has the burden of proving by a preponderance of the evidence that the trial court does have subject matter jurisdiction." *Paterson*, 644 F.2d at 523.

Dismissal based on a lack of subject matter jurisdiction is appropriate "only if it appears certain that the plaintiff cannot prove a plausible set of facts that establish subject-matter jurisdiction." *Davis v. United States,* 597 F.3d 646, 649 (5th Cir. 2009) (citation and quotation marks omitted).

### B.     Federal Rule of Civil Procedure 12(b)(6)

Under Rule 12(b)(6), dismissal is warranted only when the plaintiff fails to state a claim for which relief can be granted. When considering a motion to dismiss pursuant to Rule 12(b)(6), a court accepts the plaintiff's factual allegations as true and makes reasonable inferences in the plaintiff's favor. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The complaint must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation," but need not have "detailed factual allegations." *Id.* (citation and quotation marks omitted). The plaintiff's claims must also be plausible on their face, which means there is "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). The Court need not accept as true "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* (citation omitted).

## III.   Discussion

### A.     Subject Matter Jurisdiction under the Johnson Act

"The Johnson Act, 28 U.S.C. § 1342, deprives federal courts of jurisdiction over suits challenging state orders 'affecting rates chargeable by a public utility.'" *Peoples Nat'l Util. Co. v.*

*City of Houston*, 837 F.2d 1366, 1367 (5th Cir. 1988) (citation omitted). The Act "denies federal jurisdiction when four criteria are met":

(1)   Jurisdiction is based solely on diversity of citizenship or repugnance of the order to the Federal Constitution; and,
(2)   The order does not interfere with interstate commerce; and,
(3)   The order has been made after reasonable notice and hearing; and,
(4)   A plain, speedy and efficient remedy may be had in the courts of such State.

*Id.* (citing 28 U.S.C. § 1342). "The burden of proving that all four elements of the Johnson Act have been satisfied lies with the party seeking to invoke the Act." *Occidental Chem. Corp. v. Louisiana Pub. Serv. Comm'n*, 494 F. Supp. 2d 401, 412–13 (M.D. La. 2007) (citations omitted). MPC therefore has the burden in this case.

The parties do not dispute that the first, second, and fourth criteria are met. *See Peoples Nat'l Util. Co.*, 837 F.2d at 1367–68. The Court's review of the record confirms that this is the case: the Plaintiffs allege federal constitutional claims; the March 2013 and August 2015 orders address intrastate rates only; and Mississippi courts provide a remedy for "[a]ny party aggrieved by any final finding, order or judgment of the commission in any utility rate proceedings involving a filing for a rate change of any public utility." Miss. Code Ann. § 77-3-72(1). "[T]hus, only the [third] criteri[on] is at issue." *Peoples Nat'l Util. Co.*, 837 F.2d at 1368.

### 1.   The March 2013 Order

In 2015, the Mississippi Supreme Court held that the Commission's March 2013 order was not "made after reasonable notice." *See Mississippi Power Co.*, 168 So. 3d at 914. The question is whether that judgment has preclusive effect in this matter.

"To determine the preclusive effect of a state court judgment in a federal action, federal courts must apply the law of the state from which the judgment emerged." *Black v. N. Panola Sch.*

*Dist.*, 461 F.3d 584, 588 (5th Cir. 2006) (citation and quotations omitted). The Mississippi Supreme

Court has held:

> The doctrine of collateral estoppel is used to preclude parties "from relitigating the specific issues actually litigated, determined by, and essential to the judgment in a former action, even though a different cause of action is the subject of the subsequent action." The parties do not have to be the exact parties that litigated the former action; instead, if the nonparty can prove that he was in privity with the parties in the former action, then collateral estoppel may be applied. For a nonparty to be considered in privity, the nonparty must be "connected with [the former action] in their interests [and be] affected by the judgment with reference to interest involved in the action, as if they were parties." Even if the nonparty is considered to be in privity, the issues must be "the specific issues actually litigated."

*Baker & McKenzie, LLP v. Evans*, 123 So. 3d 387, 401–02 (Miss. 2013) (citations omitted).

"Where the elements of estoppel have been satisfied, the court's inquiry is not 'whether the court's

order was erroneous, but only that it was the final judgment of the case.'" *State ex rel. Moore v.*

*Molpus*, 578 So. 2d 624, 642 (Miss. 1991) (citation omitted).

   Here, the elements of estoppel are satisfied. While Plaintiffs were not parties to the former

action, they are in privity with the individual ratepayer who intervened in that action. The

Mississippi Supreme Court noted that the intervenor "raise[d] his objections, not only for himself,

but also for the unnoticed ratepayers." *Mississippi Power Co.*, 168 So. 3d at 914. Plaintiffs fall

within that category. The issue of whether ratepayers were afforded reasonable notice was also

"litigated, determined by, and essential to the judgment" in the 2015 case, *Baker & McKenzie*, 123

So. 3d at 401, as the Mississippi Supreme Court found that the ratepayers' due process rights had

been violated:

> *Ab initio*, the Commission deprived ratepayers of procedural due process by failing to require notice to the ratepayers. No notice of the original filing was provided to the ratepayers in the overwhelming majority of the southeastern Mississippi counties constituting MPC's service area. MPC sought and obtained approval for CWIP recovery that would result in rate increases. When MPC pursued rate increases as part of its certificate filing, all of its customers were entitled to notice. Few, if any, received it.

*Mississippi Power Co.*, 168 So. 3d at 914.

MPC argues that "reasonable notice and hearing were given" through the review of the March 2013 order by the Mississippi Supreme Court. It contends that "the opportunity to appeal from a state court judgment is an adequate post-deprivation remedy."

This argument is not persuasive because it conflates the third and fourth Johnson Act criteria. While the Johnson Act does not define with precision what constitutes "reasonable notice and hearing" under the third criterion, a plain reading of the statute makes clear that the question is whether the rate-affecting order itself "has been made *after* reasonable notice and hearing." 28 U.S.C. § 1342 (emphasis added); *see also Gulf Water Benefaction Co. v. Pub. Util. Comm'n of Texas*, 674 F.2d 462, 468 (5th Cir. 1982). The fourth criterion, alternatively, concerns whether the state courts provide a "plain, speedy and efficient remedy" after a potentially offending order is made. *Id.*

For criterion four, a "plain, speedy and efficient remedy" was not only available but provided by Mississippi courts. As to criterion three, the Mississippi Supreme Court held that the Commission's March 2013 order was not made after reasonable notice. That finding precludes further litigation on that point in this forum.

Given the Mississippi Supreme Court's ruling that the March 2013 order was made without reasonable notice, the third criterion of the Johnson Act is not met as to that order. The Johnson Act does not deprive this Court of jurisdiction to hear Plaintiffs' claims as to that order.

### 2.    The August 2015 Order

The next question is whether the Johnson Act deprives this Court of jurisdiction to hear Plaintiffs' constitutional challenge to the Commission's August 2015 Order.

The amended complaint and the parties' submissions do not make clear what notice, if any, was provided ratepayers prior to the Commission's Order adopting the Kemper Refund Plan on August 6, 2015. MPC points to a number of efforts to provide notice *after* the hearing, *see* Docket No. 23 at 15, but offers conclusory statements that notice was provided beforehand.

MPC says that "interested parties were given seven days to respond" to its proposed refund plan in advance of the hearing. The Commission's August order, however, makes no mention of "interested parties" receiving the opportunity to respond. In sending its proposed refund plan to the Commission, MPC only copied "[p]arties of record," *see* Docket No. 23-7 at 2, and the prior order from the Commission after the case was remanded by the Mississippi Supreme Court noted that "parties to this proceeding may respond to MPC's refund plan filing within seven (7) days," *In Re: Notice of Intent of Mississippi Power Co. for A Change in Rates Related to the Kemper Cty. Igcc Project*, No. 2013UN14, 2015 WL 4205192, at *2 (July 7, 2015). It is undisputed that Plaintiffs were not parties to the regulatory proceeding.

MPC has not shown that reasonable notice was provided before the Commission issued the August 2015 Order. Accordingly, it has not established that the Johnson Act deprives this Court of subject matter jurisdiction to hear Plaintiffs' federal claims as to that order.

### B.    Plaintiffs' Federal Claims

Turning now to the Rule 12(b)(6) portion of its brief, MPC argues that Plaintiffs' Section 1983 claims are barred by the statute of limitations. "[T]he statute of limitations is an affirmative defense that 'places the burden of proof on the party pleading it.'" *Frame v. City of Arlington*, 657 F.3d 215, 239 (5th Cir. 2011) (citations omitted).

In Mississippi, the limitations period for a claim arising under Section 1983 is three years. *Cuvillier v. Taylor*, 503 F.3d 397, 401–02 (5th Cir. 2007) (citations omitted). The limitations

period begins to run when "the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured." *Piotrowski v. City of Houston*, 51 F.3d 512, 516 (5th Cir. 1995) (citation omitted). "A plaintiff's awareness encompasses two elements: (1) The existence of the injury; and (2) causation, that is, the connection between the injury and the defendant's actions." *Id.* (citation omitted). "The plaintiff need not have knowledge of fault in the legal sense for the statute to begin to run, but she must have knowledge of facts that would lead a reasonable person (a) to conclude that there was a causal connection . . . or (b) to seek professional advice, and then, with that advice, to conclude that there was a causal connection between the [defendant's acts] and injury." *Id.* (quoting *Harrison v. United States*, 708 F.2d 1023, 1027 (5th Cir. 1983)).

Plaintiffs filed the complaint more than five years after the Commission issued its March 2013 order.[1] Accordingly, Plaintiffs' claims regarding the March 2013 order are barred by the statute of limitations. They do not make any serious argument to the contrary.

As to the Commission's order of August 6, 2015, Plaintiffs allege that MPC's "adoption, enactment and enforcement of the interest rate calculation method" governing the Kemper Refund Plan violates their constitutional rights. Plaintiffs specifically point to MPC's use of a 9.5 percent "weighted average cost of capital" (WACC) to calculate the refund payments rather than an 8 percent annual interest rate Plaintiffs allege was required under Mississippi law.

The parties disagree as to when the statute of limitations began to run. Plaintiffs argue that August 16, 2016 is the correct date. That day, they received a report from an economist they commissioned to advise them "on whether or not the interest rate payments made to customers . . . were commensurate with the statutory interest rate payments described in Mississippi statutes or

---

[1] It is questionable if Plaintiffs have standing to bring claims as to the March 2013 order, since any alleged injury stemming it was fully redressed by the 2015 Mississippi Supreme Court ruling.

with the interest rate that was claimed to be due under the Kemper Refund Plan." Docket No. 28 at 5–6. In contrast, MPC argues that the statute of limitations began to run on August 6, 2015, the date of the order accepting MPC's refund plan.

Plaintiffs "had knowledge of facts that would lead a reasonable person . . . to seek professional advice" as early as August 6, 2015. The plan adopted that day states that interest would be calculated using MPC's WACC. Docket No. 23-7 at 5. Once the Commission provided that information, a reasonable person would have sufficient facts to seek professional advice to confirm whether the interest rate was proper. We know that was the case here, in fact, because Plaintiffs actually *did* seek professional advice as to the import of the refund plan's interest rate. Unfortunately, they did not make use of that advice for more than two years.

The Court concludes that Plaintiffs had until August 6, 2018 to file suit. They filed suit on November 21, 2018. Accordingly, Plaintiffs' Section 1983 claims arising from the August 2015 order are time-barred.

### C.    Plaintiffs' State Claims

"When a court dismisses all federal claims before trial, the general rule is to dismiss any pendent claims." *Bass v. Parkwood Hosp.*, 180 F.3d 234, 246 (5th Cir. 1999). Here, however, Plaintiffs allege that the Court has independent jurisdiction over their state law claims under CAFA.

"CAFA greatly expands federal jurisdiction over interstate class action lawsuits." *Hollinger v. Home State Mut. Ins. Co.*, 654 F.3d 564, 569 (5th Cir. 2011) (citations omitted). The statute "grants the federal courts original jurisdiction to hear interstate class actions where":

> (1) the proposed class contains more than 100 members; (2) minimal diversity exists between the parties (i.e., at least one plaintiff and one defendant are from different states); (3) the amount in controversy exceeds $5,000,000; and (4) the primary defendants are not states, state officials, or other governmental entities.

*Id.* (citations omitted). However, the statute provides three exceptions that divest the court of jurisdiction if proven by a preponderance of the evidence: "(1) the home state exception, [28 U.S.C.] § 1332(d)(4)(B); (2) the local controversy exception, § 1332(d)(4)(A); and (3) discretionary jurisdiction, § 1332(d)(3)." *Preston v. Tenet Healthsystem Mem'l Med. Ctr., Inc.*, 485 F.3d 793, 797 (5th Cir. 2007).

MPC argues that the home state exception applies.[2] Under that exception, a district court "shall decline to exercise jurisdiction [over a class action in which] . . . two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed." 28 U.S.C. § 1332(4)(B). As "the party objecting to CAFA jurisdiction," MPC has the burden to prove that this exception "divests the district court of subject matter jurisdiction." *Hollinger*, 654 F.3d at 571.

 "Citizenship, for purposes of proving an exception to CAFA, must be analyzed as of the date the complaint or amended complaint was filed." *Id.* at 573. "Jurisdictional determinations should be made largely on the basis of readily available information." *Id.* at 570 (quotations and citations omitted). "The court has wide, but not unfettered, discretion to determine what evidence to use in making its determination of jurisdiction." *Id.* at 570–71 (citations omitted).

Plaintiffs' amended complaint defines the proposed class as follows:

> All individuals and commercial businesses and governmental entities, including their predecessors and successors-in-interest, who paid increased rates for <u>retail</u> electric service from MPC from March 5, 2013 to July 20, 2015 maintained by MPC under the PSC Final Mirror CWIP Order dated March 5, 2013.

MPC's comptroller, Cynthia Shaw, has provided an affidavit stating that 213,334 customers paid increased rates during this class period. This number is comprised of 180,446

---

[2] In its submissions, MPC refers to the "local controversy exception" yet quotes the section of the statute containing the home state exception. The Court's analysis follows the statutory language actually quoted.

individual residential customers with Mississippi addresses, 18,488 individual non-residential customers with Mississippi addresses, and 14,400 customers with addresses outside of the state of Mississippi.

Mississippi citizens plainly comprise more than two-thirds of the total addresses. Accordingly, the Court could have jurisdiction under CAFA only if Plaintiffs demonstrated somewhere in their response that MPC's numbers are wrong, such that at least ~71,000 of the customers are not Mississippi citizens. Plaintiffs' response brief does not try to make this argument, but instead contends that "the merits are so intertwined with the jurisdiction issue under the Class Action Fairness Act that the two cannot be separated." Yet Plaintiffs do not explain how the calculation of the class size is intertwined with their state claims and do not provide any Fifth Circuit law explaining their theory.

Because MPC has met its burden of establishing that the home state exception applies based on the preponderance of the evidence, Plaintiffs' state-law claims cannot proceed in this forum. The Court will dismiss Plaintiffs' state-law claims "without prejudice so that [they] may refile [their] claims in the appropriate state court." *Bass*, 180 F.3d at 246.

## IV.    Conclusion

MPC's Motion to Dismiss is granted.

**SO ORDERED**, this the 26th day of May, 2020.

s/ Carlton W. Reeves
UNITED STATES DISTRICT JUDGE